# Hartman *versus* Keown.

In pursuance of an arrangement between them, A.; who owned a tavern and farm, took possession of a mare belonging to B., agreeing to train her on the track, run her from time to time and divide the track-money and premiums with B. The mare was frequently seen on the track, but B. received no share of the gains, if any were obtained thereby. Subsequently, B. borrowed $50 from one C., giving him a bill of sale of the mare as security. On B.'s failure to repay this loan, it was paid by A. to whom C. transferred the bill of sale. A. continued in possession of the mare, caused her to be gotten with foal, and later again placed her on the track. Afterwards, B. went to A.'s premises and took the mare away. In an action of replevin by A. against B. to recover the mare, on the ground that he had a lien against her for her keeping : *Held*, 1. That A. had a lien on the mare for her keeping, as well as for the $50 advanced by C. ; and that he had a right to enforce this lien by an action of replevin.

2. That in view of the agreement, it was not error for the court to refuse to charge that A.'s action, if proved, in allowing the mare to be taken out of his possession and run on the track, where she gained premiums; or his action in apparently assuming absolute ownership of her, by keeping all premiums and causing the mare to be gotten with foal, destroyed any lien which he might otherwise have had for her keeping, and that therefore he could not recover.

3. That evidence tending to prove these facts was properly rejected as incompetent and irrelevant.

October 17th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY, STERRETT and GREEN, JJ. PAXSON, J., absent.

ERROR to the Court of Common Pleas No. 1, of *Allegheny county :* Of October Term 1882, No. 28.

Replevin, by William Keown against Charles Hartman for a bay pacing mare.*

On the trial, before STOWE, P. J., the following facts appeared : In pursuance of an arrangement made by Charles Hartman, Jr., a minor son of the defendant and Dale Keown, a brother of the plaintiff, said Dale Keown took possession of a certain bay mare called " Geneva," belonging to defendant, agreeing, as was alleged by the defendant, to train her on the track, and run her from time to time, subject to the approval of Hartman, to divide the track money and premiums, and to charge nothing outside of his share of such returns, for keeping and training the mare.

Dale Keown took the mare to the farm of his brother William, the plaintiff, where she was kept most of the time. She was frequently seen at races up to the Fall of 1878, but no division of premium monies was made.

On June 30th 1877, Hartman borrowed $50 of one Hender-

[Hartman *v.* Keown.]

son, giving him as security therefor a bill of sale which set out that in consideration of said loan, "I do sell and assign to him (Henderson), one bay mare, to hold as security for the payment of the same in two months from date." Hartman having failed to pay this loan when due, Henderson collected it from William Keown, who was then in possession of the mare, and gave him the bill of sale, making to him a verbal transfer of his right thereto. Soon after this, Keown, without consulting Hartman, caused the mare to be gotten with foal, and in 1878 and 1880 frequently placed her on the track, receiving, as was alleged, large gains thereby.

In September 1880, Hartman went to Keown's premises, which consisted of a farm and tavern, and without the consent of Keown, obtained possession of the mare, and took her home with him; thereupon, Keown, who denied any agreement not to charge for her keep, brought this suit, claiming a lien upon her under the Act of April 7th 1807, Purd. Dig. 773.

At the trial, the defendant offered to prove by certain witnesses that the mare, during the time the plaintiff alleges he was holding her under bailment, was removed from his custody and keeping, with his knowledge and consent, and taken to certain race tracks in Western Pennsylvania, and elsewhere, where she was run for track money, and that she had in several of these races taken the purse, track money or premiums; and further, that he had caused her to be gotten with foal without the knowledge or consent of the defendant, and kept the colt; for which reasons he alleged that the contract claimed by the plaintiff, was violated, his right to compensation ended, and any lien which he might have had for the alleged keeping of the mare was forfeited.

Objected to as incompetent and irrelevant. Objection sustained. Exception. (7th, 8th, 9th and 10th assignments of error.)

The defendant submitted the following points:

(2.) That even if a contract of bailment had existed in the premises in favor of the plaintiff, if he at any time set up a claim of ownership to the mare, without having bought her from her owner, while in his possession, and exercised ownership over her adversely to the defendant or his son, that destroyed any lien, as bailee, that plaintiff might have had upon the mare up to the date he made such claim of ownership of the mare, and no lien did or could in law, or equity, exist against said mare for keeping from the date when he so made claim to her ownership, and plaintiff cannot recover in this suit. Refused. (1st assignment of error.)

(4.) That if the jury believe from the evidence, that plaintiff regarded and treated the bill of sale to R. L. Henderson, on

which he paid the $50 mentioned therein to Henderson, as a valid sale and purchase of the mare, and thereafter claimed her as his own, then he could not claim a lien on the mare for her keeping from that date (September 20th 1878), if he acquired no valid title to or ownership of the mare by virtue of said bill of sale, and he can not maintain this action. Refused. (2d assignment of error.)

(5.) That the payment of the $50 mentioned in the bill of sale to Henderson, by plaintiff, under the terms thereof, vested no title to, or ownership of the mare in plaintiff, and he cannot recover in this action by virtue of title or ownership under said bill. Refused. (3d assignment of error.)

(6.) That if the jury believe the plaintiff at any time after said mare came into his possession, converted her to his own use, and exercised an ownership over her adversely to the defendant, or his son, he became a wrongdoer in the premises from the beginning, and no lien existed on said mare at the commencement of this action, and he cannot recover in this suit. Refused. (4th assignment of error.)

(7.) That if the jury believe from the evidence that the defendant went peaceably to the plaintiff's stable, in the day time, and took the mare away, and that she belonged to him or his son, the plaintiff lost any lien he might have had on her for keeping, and he can not recover in this action. Refused. (5th assignment of error.)

(11.) That if plaintiff had a lien on said mare for her keeping, and that it did not exist at the commencement of this action, his legal remedy would be an action of assumpsit against defendant, or the owner of the mare, and this action of replevin cannot be maintained, and the verdict should be for the defendant. Refused. (6th assignment of error.)

Verdict and judgment for plaintiff. Whereupon the defendant took this writ assigning for error the refusal of his points and the rejection of evidence as above noted.

*A. M. Watson* (with whom was *C. C. Taylor*), for plaintiff in error.—The evidence which the court rejected would have shown that any lien Keown might at one time have had, on the mare, was released by his violation of his agreement as bailee, and by his treating her as his own property. Again he lost his lien under the livery-stable and innkeepers' Act of April 7th 1807 by neglecting to give notice when $30 were due, and by his failure to sell the mare at public sale, on default of the payment of this sum. He had no lien at common law because there was no special contract: Story on Bailments §§ 61, 62, 65, 66; Edward on Bailments, §§ 331, 474, 474; Grinnell *v.* Cook, 3 Hill 488; Jackson *v.* Cummins, 5 M. & W. 343.

*Morton Hunter* (with whom was *Thomas M. Marshall*), for defendant in error.—The Act of April 7th 1807 is merely declaratory in its terms and does not confine the innkeeper or livery stable-keeper, to the method of collecting his lien afforded by the Act: Young *v.* Kimball, 23 Pa. St. 193. The fact that Keown used the mare did not destroy his lien. Such action could have no further effect than to make him answerable as bailee for damages resulting from using the pledge: Thompson *v.* Patrick, 4 Watts 414. The sale to Henderson was merely as security for the loan of $50 made by him to Hartman; and Keown, who afterwards paid the loan, simply took Henderson's title. Such a sale being merely a collateral security could not interfere with Keown's lien, but rather gave him an additional one.

Mr. Justice Sterrett delivered the opinion of the court November 20th 1882.

In view of the testimony, or rather the lack of evidence, to justify an affirmance, the learned president of the Common Pleas was clearly right in refusing the points referred to in the first six specifications. The testimony introduced by the plaintiff below tended to prove that he was entitled to a lien on the mare in question for her keeping; and, under the instructions contained in the general charge, to which no exception is taken, the question was fairly submitted to the jury, and by them determined in his favor. To have withdrawn the case from their consideration by binding instruction, as requested in defendant's twelfth point, would have been error.

In considering the remaining assignments, the purpose for which the mare was entrusted to defendant in error should not be overlooked. He testified she was left with him "for the purpose of being handled on the track" by his brother Dale Keown: and, in his history of the case, plaintiff in error admits that, pursuant to an arrangement between himself and Dale, the latter took possession of her, "agreeing to train her on the track and run her from time to time, subject to his approval, dividing the track money and premiums that might be taken by her." It is true, that in the same connection he says, "Dale was to charge nothing, outside of his share of this money, for keeping and training the mare;" that he got her "on these terms and afterwards took her to the farm of his brother William Keown where she was kept for most of the time." The fact that she was taken there, for the purposes above mentioned, is impliedly established by the verdict; but, beyond this, there was no proof of any understanding or agreement, to which defendant in error was a party, that would deprive him of a lien for her keeping. In view then of the fact that Dale Keown was authorized to train the mare, and, in the language of the

[Stewart *v.* Allegheny Nat. Bank.]

turf, "handle her on the track," we cannot say the offers of testimony, covered by the seventh, ninth and tenth specifications, were improperly rejected as incompetent and irrelevant. The first offer was to prove " that the mare, during the time plaintiff alleges he was holding her under bailment, was removed from his custody and keeping, with his knowledge and consent, and taken to certain race tracks in Western Pennsylvania and elsewhere, where she was run for track money, and that she had, in several of these races, taken the purse, track money or premiums." Assuming all this to be true, it *is* entirely consistent with the arrangement which plaintiff in error admits he made with Dale Keown in regard to training and running the mare. If so, defendant in error was not chargeable with any breach of duty or bad faith in permitting her removal, "from his custody and keeping," for the purposes stated in the offer. The third and fourth offers are substantially the same, in principle, and do not require any further notice. There is nothing in either of the offers, embraced in the last four specifications, that could have defeated or legitimately tended to defeat a recovery by the plaintiff below. It was clearly shown that he had a lien on the mare, not only for her keeping, but also for the $50 advanced by Henderson, whose claim he acquired by assignment. From anything that appears in the testimony, or that the defendant below proposed to prove, the lien was neither forfeited nor relinquished, and he had a right to enforce it, in an action of replevin, against the plaintiff in error who stealthily removed the mare without paying, or tendering payment, for her keeping.

Judgment affirmed.